FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## LAFAYETTE DIVISION

2010 DEC 15 PM 3: 57

STEP    ER. LUDWIG, CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                                            :
COACH, INC. and COACH SERVICES, INC.                        :
                                                            :
                  Plaintiffs,                               :
                                                            :
                - against -                                 :       Case No. 4:10CV0100
                                                            :
DIGGZ CLOTHING LLC and LORI HARTH,                          :
                                                            :
                  Defendants.                               :
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

### COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND
### REQUEST FOR JURY TRIAL

Plaintiffs Coach, Inc. and Coach Services, Inc. (hereinafter collectively referred to as

"Plaintiffs" or "Coach"), through their undersigned counsel, and for their Complaint against

Defendants Diggz Clothing LLC and Lori Harth, allege as follows:

### Nature of the Action

1.      This is an action for trademark and trade dress infringement under the

Lanham Act (15 U.S.C. §§ 1114, 1116, 1117, 1125(a) and (c)); copyright infringement under the

United States Copyright Act (17 U.S.C. § 501, *et seq.*); trademark infringement and unfair

competition under the common law of the State of Indiana; and forgery under Indiana Code § 35-

43-5-2(b) as well as counterfeiting under Indiana Code § 35-43-5-2(a), pursuant to Indiana Code

§ 34-24-3-1. This is also a claim for breach of contract against Diggz Clothing LLC.

1

## Jurisdiction and Venue

2. Jurisdiction over the parties and subject matter of this action is proper in this Court pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), 28 U.S.C. § 1332(a) (diversity of citizenship between the parties), and § 1338(a) (actions arising under an Act of Congress relating to copyrights and trademarks). This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a).

3. This Court has personal jurisdiction over the Defendants because they do business and/or one is organized and/or at least one is authorized to do business in the State of Indiana, within the Northern District of Indiana.

4. Venue is properly founded in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants resides in this District, may be found in this District, and/or a substantial part of the events giving rise to the claims in this action occurred within this District.

## Parties

5. Plaintiff Coach, Inc. is a corporation duly organized and existing under the laws of the State of Maryland, with its principal place of business in New York, New York. Plaintiff Coach Services, Inc. is a corporation duly organized and existing under the laws of the State of Maryland with its principal place of business in Jacksonville, Florida.

6. Defendant Diggz Clothing LLC (hereinafter, "Diggz"), owned by Indiana resident Lori Harth, is a limited liability company or other entity organized and existing under the laws of the State of Indiana, with a principal place of business in the State of Indiana (specifically, within the Northern District of Indiana), located at 3111 Builder Drive, Lafayette, Indiana 47909.

2

## The World Famous Coach Brand and Products

7.      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the preceding paragraphs, for purposes of this factual background section of the Complaint.

8.      Plaintiffs also incorporate by reference, as if fully set forth therein, the preceding paragraphs for purposes of all subsequent factual and legal sections of this Complaint.

9.      The following factual allegations are now set forth for purposes of all legal counts alleged in this Complaint, *infra.*

10.     Coach was founded more than sixty years ago as a family-run workshop in Manhattan, New York. Since then Coach has been engaged in the manufacture, marketing and sale of fine leather and mixed material products including handbags, wallets, accessories including eyewear, footwear including shoes, jewelry and watches. Coach sells its goods through its own specialty retail stores, department stores, catalogs and via an Internet website throughout the United States.

11.     Coach has used a variety of legally-protected trademarks, trade dresses, and design elements/copyrights for many years on and in connection with the advertisement and sale of its products, including those detailed in paragraphs 13 - 25 of this Complaint (together, the "Coach Marks").

12.     Coach has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Coach Marks. As a result, products bearing the Coach Marks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Coach, and have acquired strong secondary meaning. Coach products have also become among the most popular in the world, with Coach's annual global sales currently exceeding three billion dollars.

3

**The Coach Trademarks**

13.    Coach is the owner of the following United States Federal Trademark

Registrations (hereinafter collectively referred to as the "Coach Trademarks"):

| Registration No. | Mark | Classes | Date of Registration | Image |
| --- | --- | --- | --- | --- |
| 2,088,706 | COACH | 6, 9, 16, 18, 20 and 25 for *inter alia* key fobs, eyeglass cases, satchels, tags for luggage, luggage, backpacks, picture frames, hats, gloves and caps. | September 19, 1997 | COACH |
| 3,157,972 | COACH | 35 for retail store services. | October 17, 2006 | COACH |
| 0,751,493 | COACH | 16, 18 for *inter alia* leather goods, wallets and billfolds. | June 23, 1963 | COACH |
| 2,451,168 | COACH | 9 for *inter alia* eyeglasses and sunglass Cases | May 15, 2001 | COACH |
| 2,537,004 | COACH | 24 for *inter alia* home furnishings. | February 5, 2002 | COACH |
| 1,846,801 | COACH | 25 for *inter alia* men's and women's coats and jackets. | July 26, 1994 | COACH |
| 3,439,871 | COACH | 18 for *inter alia* umbrellas. | June 3, 2008 | COACH |
| 2,061,826 | COACH | 12 for *inter alia* seat covers. | May 13, 1997 | COACH |
| 2,231,001 | COACH | 25 for *inter alia* men and women's clothing. | March 9, 1999 | COACH |
| 2,836,172 | COACH | 14 for *inter alia* sporting goods and stuffed toys. | April 27, 2004 | COACH |
| 2,939,127 | COACH | 9 for *inter alia* camera cases. | April 12, 2005 | COACH |
| 3,354,448 | COACH | 14 for *inter alia* jewelry. | December 11, 2007 | COACH |

4

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 2,579,358 | COACH | 20 for *inter alia* pillows, mirrors and glassware. | June 6, 2002 | COACH |
| 2,074,972 | COACH | 3, 21 for *inter alia* leather cleaning products and shoe brushes. | July 1, 1997 | COACH |
| 2,446,607 | COACH | 16 for *inter alia* writing instruments. | April 24, 2001 | COACH |
| 2,291,341 | COACH | 14 for *inter alia* clocks and watches. | November 9, 1999 | COACH |
| 1,071,000 | COACH | 18, 25 for *inter alia* women's handbags. | August 9, 1977 | COACH |
| 3,633,302 | COACH | 3 for *inter alia* perfumes, lotions and body sprays. | June 2, 2009 | COACH |
| 2,534,429 | COACH & LOZENGE DESIGN | 9 for *inter alia* eyeglasses, eyeglass frames and sunglasses. | January 29, 2002 | COACH |
| 3,363,873 | COACH & LOZENGE DESIGN | 3 for *inter alia* fragrances. | January 1, 2008 | COACH |
| 2,252,847 | COACH & LOZENGE DESIGN | 35 retail services. | June 15, 1999 | COACH |
| 2,291,368 | COACH & LOZENGE DESIGN | 14 for *inter alia* jewelry. | November 9, 1999 | COACH |
| 2,666,744 | COACH & LOZENGE DESIGN | 24 for *inter alia* bed linens. | December 24, 2002 | COACH |
| 2,534,429 | COACH & LOZENGE DESIGN | 9 for *inter alia* eyeglasses, eyeglass frames and sunglasses. | January 29, 2002 | COACH |
| 2,169,808 | COACH & LOZENGE DESIGN | 25 for *inter alia* clothing for men and women. | June 30, 1998 | COACH |

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 2,045,676 | COACH & LOZENGE DESIGN | 6, 9, 16, 18, 20, 25 for *inter alia* key fobs, money clips, phone cases, attaché cases, duffel bags, picture frames, hats, caps and gloves. | March 18, 1997 |  |
| 1,070,999 | COACH & LOZENGE DESIGN | 18, 25 for *inter alia* women's handbags. | August 9, 1977 |  |
| 1,309,779 | COACH & LOZENGE DESIGN | 9, 16, 18 for *inter alia* eyeglass cases and leather goods such as wallets, handbags and shoulder bags. | December 19, 1984 |  |
| 2,035,056 | COACH & LOZENGE DESIGN | 3, 21 for *inter alia* leather cleaning products and shoe brushes. | February 4, 1997 |  |
| 2,983,654 | COACH & LOZENGE DESIGN | 18, 24, 25 for *inter alia* handbags, leather goods, fabrics, swimwear, hats and shoes. | August 9, 2005 |  |
| 2,626,565 | CC & DESIGN (Signature C) | 18 for *inter alia* handbags, purses, clutches, shoulder bags, tote bags, and wallets. | September 24, 2002 |  |
| 2,822,318 | CC & DESIGN (Signature C) | 24 for *inter alia* fabric for use in the manufacture of clothing, shoes, handbags, and luggage. | March 16, 2004 |  |
| 2,832,589 | CC & DESIGN (Signature C) | 14, 16, 18, 20, 24, 25, 4, 6, 9 for *inter alia* sunglasses and eye glass cases, leather goods, | April 13, 2004 |  |

6

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 2,832,740 | CC & DESIGN (Signature C) | 28 for *inter alia* stuffed animals. | April 13, 2004 |  |
| 2,592,963 | CC & DESIGN (Signature C) | 25 for *inter alia* clothing. | July 9, 2002 |  |
| 2,822,629 | CC & DESIGN (Signature C) | 35 for retail services for *inter alia* handbags, small leather goods, jewelry and watches. | March 16, 2004 |  |
| 3,012,585 | AMENDED CC & DESIGN (Signature C) | 18, 24, 25 for *inter alia* handbags, purses, fabrics and clothing. | November 8, 2005 |  |
| 3,396,554 | AMENDED CC & DESIGN (Signature C) | 3 for *inter alia* fragrances. | March 11, 2008 |  |
| 3,696,470 | COACH OP ART & Design | 18, 24 and 25 for *inter alia* bags, umbrellas, shoes and the manufacture of these goods. | October 13, 2009 |  |
| 3,251,315 | COACH EST. 1941 | 18, 25 for *inter alia* handbags, small leather goods, jackets and coats. | June 12, 2007 |  |
| 3,413,536 | COACH EST. 1941 STYLIZED | 14, 18, 25 for *inter alia* handbags, purses, shoulder bags, tote bags, and wallets. | April 15, 2008 |  |
| 3,441,671 | COACH LEATHERWARE EST. 1941 [Heritage Logo] | 9, 14, 18, 25 for *inter alia* handbags, leather cases, purses, and wallets. | June 3, 2008 |  |

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 3,072,459 | CL STYLIZED | 18 for *inter alia* leather goods. | March 28, 2006 |  |
| 3,187,894 | CL STYLIZED | 18, 25 for *inter alia* leather goods and clothing. | December 12, 2006 |  |
| 1,664,527 | THE COACH FACTORY STORE & LOZENGE DESIGN | 42 for *inter alia* retail services for leather ware. | November 12, 1991 |  |
| 3,338,048 | COACH STYLIZED | 18 for *inter alia* luggage, backpacks and shoulder bags | November 11, 2007 |  |
| 3,149,330 | C & LOZENGE LOGO | 9, 14, 16, 25 for *inter alia* desk accessories, clothing and eye glasses. | September 26, 2006 |  |
| 2,162,303 | COACH & TAG DESIGN | 25 for *inter alia* clothing. | June 2, 1998 |  |

14.     These registrations are valid, subsisting, in full force and effect, and have become incontestable pursuant to 15 U.S.C. §1065.[1]

15.     The registration of the marks constitutes *prima facie* evidence of their validity and conclusive evidence of Coach's exclusive right to use the Coach Trademarks in connection with the goods identified thereby and other commercial goods.

16.     The registration of the marks also provides sufficient notice to Defendants of Coach's ownership and exclusive rights in the Coach Trademarks.

---

[1] All registrations originally held in the name of Coach's predecessors, Sara Lee Corporation and Saramar Corporation, were assigned in full to Coach on or about October 2, 2000.

17.     The Coach Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125 (c)(1).

18.     The Coach Trademarks at issue in this action have been continuously used and have never been abandoned.

## The Coach Trade Dress

19.     Coach is the owner of a variety of unique and distinctive trade dresses consisting of a combination of one or more features, including sizes, shapes, colors, designs, fabrics, hardware, hangtags, stitching patterns and other non-functional elements comprising the overall look and feel incorporated into Coach products (the "Coach Trade Dresses").

20.     Consumers immediately identify Coach as the single source of high quality products bearing the Coach Trade Dresses.

21.     The Coach Trade Dresses associated with Coach products are independent of the functional aspects of Coach products.

22.     Coach has employed the Coach Trade Dresses associated with its products exclusively and without interruption and the Coach Trade Dresses have never been abandoned.

## The Coach Design Elements -- Copyrights

23.     Many of the decorative and artistic combinations of the design elements present on Coach products are independently protected works under the United States Copyright Laws.  These design elements are wholly original works and fixed in various tangible products and media, thereby qualifying as copyrightable subject matter under the United States Copyright Act, 17 U.S.C. Sections 101, *et seq.* (hereinafter referred to as the "Coach Design Elements").

24.     Coach has a valid copyright registered with the United States Copyright Office for its "Legacy Stripe" design, with registration number VAu000704542.

9

25.     Coach has a valid copyright registered with the Copyright Office for its "Signature C" design, with registration number VA0001228917.

26.     At all times relevant hereto, Coach has been the sole owner and proprietor of all rights, title, and interest in and to the copyrights in the Design Elements used on Coach products, and such copyrights are valid, subsisting and in full force and effect.

### Defendants' Acts of Infringement and Unfair Competition

27.     Upon information and belief, Defendants are engaged in designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale products bearing logos and source-identifying indicia and design elements that are studied imitations of the Coach Trademarks, the Coach Trade Dresses, and the Coach Design Elements (hereinafter referred to as the "Infringing Products"). Defendants' specific conduct includes, among other things:

A.     Advertising, promoting, distributing, selling, and/or offering for sale handbags bearing the Coach Trademarks, the Coach Trade Dress, and/or the Coach Design Elements, as well as other Infringing Products, from a Diggz retail store location located at 3111 Builder Drive, Lafayette, Indiana. For example, on August 22, 2010, a representative purchased a handbag labeled as "Coach" from said retail store location, and this item was forwarded to Coach in New York, New York, for assessment of its authenticity. Upon inspection, which took place on September 2, 2010, Coach determined that Coach does not manufacture, sell or offer the style of handbag purchased on August 22, 2010, by the representative, and furthermore the overall quality and craftsmanship of the handbag does not meet Coach's high standards. Moreover, this Diggz store is not an authorized retailer of Coach merchandise, and the average MSRP for an authentic Coach handbag is far greater than the price paid by the investigator for

10

this handbag.  The average MSRP for authentic Coach handbags is approximately $325.00, whereas the handbag purchased by the representative on August 22, 2010, was $65.00.

          B.      Advertising, promoting, distributing, selling, and/or offering for sale wallets bearing the Coach Trademarks, the Coach Trade Dress, and/or the Coach Design Elements, as well as other Infringing Products, from a Diggz retail store location located at 3111 Builder Drive, Lafayette, Indiana.  For example, on August 22, 2010, a representative purchased a wallets labeled as "Coach" from said retail store location, and these were forwarded to Coach in New York, New York, for assessment of its authenticity.  Upon inspection, which took place on September 2, 2010, Coach determined that Coach does not manufacture, sell or offer the style of wallet purchased on August 22, 2010, by the representative, and furthermore the overall quality and craftsmanship of the wallet does not meet Coach's high standards.  Moreover, this Diggz store is not an authorized retailer of Coach merchandise, and the average MSRP for an authentic Coach wallet is far greater than the price paid by the investigator for these wallets.  The average MSRP for authentic Coach wallets is approximately $200.00, whereas the wallet purchased by the representative on August 22, 2010, was $26.00.

          C.      Otherwise designing and manufacturing, advertising, promoting, distributing, selling, and/or offering for sale the Infringing Products, including those specifically identified above, within the Northern District of Indiana, and doing so in violation of federal and state law as well as in breach of a contract between Plaintiffs and Diggz Clothing, LLC, a true and correct copy of which is attached hereto.

28.     Defendants are well aware of the extraordinary fame and strength of the Coach Brand, the Coach Trademark, the Coach Trade Dresses, and the Coach Design Elements, and the incalculable goodwill associated therewith.

29.     Defendants have no license, authority, or other permission from Coach to use any of the Coach Trademarks, the Coach Trade Dresses, or the Coach Design Elements in connection with the designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale of the Infringing Products.

30.     Defendants have been engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Coach's rights, or with bad faith, for the purpose of trading on the goodwill and reputation of the Coach Marks and Coach products, even after an agreement to not do so.

31.     Defendants' activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Infringing Products and Coach.

32.     Upon information and belief, Defendants intend to continue to design, manufacture, advertise, promote, import, distribute, sell, and/or offer for sale the Infringing Products unless otherwise restrained, and indeed have already done so after agreeing to refrain.

33.     Coach is suffering irreparable injury, has suffered substantial damages as a result of Defendants' activities, and has no adequate remedy at law.

## COUNT I
### (Trademark Counterfeiting, 15 U.S.C. § 1114)

34.     Coach repeats and realleges the allegations set forth in paragraphs 1-33, *supra*.

35.     Defendants, without authorization from Coach, have used and is continuing to use spurious designations that are identical to, or substantially indistinguishable from, the Coach Trademarks.

36.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' Infringing Products are genuine or authorized products of Coach.

37.     Upon information and belief, Defendants have acted with knowledge of Coach's ownership of the Coach Trademarks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the Coach Marks.

38.     Defendants' acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

39.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

40.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

41.     Defendants' acts have damaged and will continue to damage Coach, and Coach has no adequate remedy at law.

**COUNT II**
**(Trademark Infringement, 15 U.S.C. § 1114)**

42.     Coach repeats and realleges the allegations set forth in paragraphs 1-41, *supra*.

43.     Defendants without authorization from Coach, have used and is continuing to use spurious designations that are identical to, or substantially indistinguishable from, the Coach Trademarks.

44.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Defendants' Infringing Products originate from, or are affiliated with, sponsored by, or endorsed by Coach.

45.     Defendants have acted with knowledge of Coach's ownership of the Coach Trademarks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

46.     Defendants' acts constitute trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

47.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

48.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

49.     Defendants' acts have damaged and will continue to damage Coach, and Coach has no adequate remedy at law.

## COUNT III
### (Trade Dress Infringement, 15 U.S.C. § 1125(a))

50.     Coach repeats and realleges the allegations set forth in paragraphs 1-49, *supra.*

51.     The Coach Trade Dresses are used in commerce, are non-functional, are inherently distinctive, and have acquired secondary meaning in the marketplace.

14

52.     Defendants, without authorization from Coach, have designed, manufactured, advertised, promoted, distributed, sold, and/or offered for sale, and/or is causing to be designed, manufactured, advertised, promoted, distributed, sold, and/or offered for sale, products which contain a collection of design elements that are confusingly similar to the Coach Trade Dresses.

53.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade who recognize and associate the Coach Trade Dresses with Coach.  Moreover, Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive consumers, the public, and the trade as to the source of the Infringing Products, or as to a possible affiliation, connection or association between Coach, the Defendants, and the Infringing Products.

54.     Defendants have acted with knowledge of Coach's ownership of the Coach Trade Dresses and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

55.     Defendants' acts constitute trade dress infringement in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

56.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

57.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

58.     Defendants' acts have damaged and will continue to damage Coach, and Coach has no adequate remedy at law.

## COUNT IV
### (False Designation of Origin and False Advertising, 15 U.S.C. § 1125(a))

59.     Coach repeats and realleges the allegations set forth in paragraphs 1-58, *supra.*

60.     Defendants' promotion, advertising, distribution, sale, and/or offering for sale of the Infringing Products, together with Defendants' use of other indicia associated with Coach is intended, and is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the Infringing Products, and is intended, and is likely to cause such parties to believe in error that the Infringing Products have been authorized, sponsored, approved, endorsed or licensed by Coach, or that Defendants are in some way affiliated with Coach.

61.     The foregoing acts of Defendants constitute a false designation of origin, and false and misleading descriptions and representations of fact, all in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

62.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

63.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

64.     Defendants' acts have damaged and will continue to damage Coach, and Coach has no adequate remedy at law.

## COUNT V
### (Trademark Dilution, 15 U.S.C. § 1125(c))

65.     Coach repeats and realleges the allegations set forth in paragraphs 1-64, *supra.*

66.     The Coach Trademarks are strong and distinctive marks that have been in use for many years and have achieved enormous and widespread public recognition.

67.     The Coach Trademarks are famous within the meaning of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

68.     Defendants' use of the Infringing Products, without authorization from Coach, is diluting the distinctive quality of the Coach Trademarks and decreasing the capacity of such marks to identify and distinguish Coach products.

69.     Defendants have intentionally and willfully diluted the distinctive quality of the famous Coach Trademarks in violation of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

70.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

71.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

72.     Defendants' acts have damaged and will continue to damage Coach, and Coach has no adequate remedy at law.

## COUNT VI
### (Copyright Infringement, 17 U.S.C. § 501)

73.     Coach repeats and realleges the allegations set forth in paragraphs 1-72, *supra*.

74.     Many of the Coach Design Elements contain decorative and artistic combinations that are protected under the United States Copyright Act (17 U.S.C. § 101, *et seq.*). Coach has valid registered copyrights in the Signature C design.

17

75.     Upon information and belief, Defendants had access to and copied the Signature C design and other Coach Design Elements present on Coach products.

76.     Defendants intentionally infringed Coach's copyrights in the Signature C design and other Design Elements present on Coach products by creating and distributing the Infringing Products, which incorporate elements substantially similar to the copyrightable matter present in the Signature C design and other Design Elements present on Coach products, without Coach's consent or authorization.

77.     Defendants have infringed Coach's copyrights in violation of 17 U.S.C. § 501, *et seq.*

78.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

79.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

80.     Defendants' acts have damaged and will continue to damage Coach, and Coach has no adequate remedy at law.

### COUNT VII
### (Common Law Trademark Infringement)

81.     Coach repeats and realleges the allegations set forth in paragraphs 1-80, *supra.*

82.     Coach owns all rights, title, and interest in and to the Coach Trademarks, including all common law rights in such marks.

83.     Defendants, without authorization from Coach, have used and are continuing to use spurious designations that are identical to, or substantially indistinguishable from, the Coach Trademarks.

18

84.    The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Defendants' Infringing Products originate from, or are affiliated with, sponsored by, or endorsed by Coach.

85.    Defendants have acted with knowledge of Coach's ownership of the Coach Trademarks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

86.    Defendants' acts constitute trademark infringement in violation of the common law of the State of Indiana.

87.    Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

88.    Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

89.    Defendants' acts have damaged and will continue to damage Coach, and Coach has no adequate remedy at law.

### COUNT VIII
### (Common Law Unfair Competition)

90.    Coach repeats and realleges the allegations set forth in paragraphs 1-89, *supra*.

91.    The foregoing acts of Defendants constitute unfair competition in violation of the common law of the State of Indiana.

92.    Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

93.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

94.     Defendants' acts have damaged and will continue to damage Coach, and Coach has no adequate remedy at law.

## COUNT IX
### (Forgery Under Ind. Code § 35-43-5-2(b))

95.     Coach repeats and realleges the allegations set forth in paragraphs 1-94, *supra*.

96.     Defendants, with the intent to defraud, made and/or possessed and/or disseminated written instrument, namely the marks on the Infringing Products, in such a manner that they purported (and purport) to have been made by Coach.

97.     Coach did not give Defendants the authority to make or possess or disseminate the Infringing Products and/or the marks contained thereon or on their packaging.

98.     Defendants' acts have damaged and will continue to damage Coach, and Coach has no adequate remedy at law.

99.     In addition to injunctive relief, Coach also seeks an award of actual damages, treble damages, costs and attorney's fees, pursuant to the Indiana Crime Victim's Act, Indiana Code § 34-24-3-1, for pecuniary losses resulting from Defendants' forgery even though monetary damages alone are inadequate to fully compensate Coach for Defendants' conduct.

## COUNT X
### (Counterfeiting Under Ind. Code § 35-43-5-2(a))

100.    Coach repeats and realleges the allegations set forth in paragraphs 1-99, *supra*.

101.     Defendants knowingly or intentionally made and/or disseminated written instruments, namely the marks on the Infringing Products, in such a manner that they purported (and purport) to have been made by Coach.

102.     Coach did not give Defendants the authority to make or disseminate the Infringing Products and/or the marks contained thereon or on their packaging.

103.     Defendants' acts have damaged and will continue to damage Coach, and Coach has no adequate remedy at law.

104.     In addition to injunctive relief, Coach also seeks an award of actual damages, treble damages, costs and attorney's fees, pursuant to the Indiana Crime Victim's Act, Indiana Code § 34-24-3-1, for pecuniary losses resulting from Defendants' counterfeiting even though monetary damages alone are inadequate to fully compensate Coach for Defendants' conduct.

## COUNT XI
## (Breach of Contract)

105.     Coach repeats and realleges the allegations set forth in paragraphs 1-104, *supra.*

106.     On or about June 18, 2010, Lori Harth (owner), on behalf of Diggz Clothing LLC, entered into an agreement with Plaintiffs, a true and correct copy of which is attached hereto.

107.     Pursuant to the Agreement, which speaks for itself, Diggz Clothing LLC agreed that neither it, nor its agents, nor its servants, would (directly or indirectly) distribute, sell, offer for sale, advertise, promote, display, ship, hold for sale, store or market Accused Products (defined in the Agreement as items that, although not authentic, are identical to, substantially

21

indistinguishable from, or substantially similar to products manufactured, marketed, distributed, and sold by Coach), among other obligations. *See* attached true and correct copy of Agreement.

108.   Diggz Clothing LLC has breached its contractual obligations including but not limited to those set forth above.

109.   Plaintiffs have provided notice to Diggz Clothing LLC regarding its breach of the parties' Agreement.

110.   Plaintiffs have been damaged by Diggz Clothing LLC's breach of the parties' agreement.

111.   Diggz Clothing LLC's breach of contract remains uncured at this time.

**WHEREFORE,** Coach respectfully requests that this Court enter judgment against Defendant as follows:

a.   Finding that: (i) Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114); Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); and Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)); (ii) Defendant has violated Section 501 of the Copyright Act of 1976 (17 U.S.C. § 501); (iii) Defendant has engaged in trademark infringement and unfair competition under the common law of Indiana; and (iv) Defendant has committed forgery and counterfeiting under Indiana's criminal statutes and such conduct has damaged Coach monetarily and in ways not adequately remedied by monetary damages alone.

b.   Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116, and 17 U.S.C. § 502, preliminarily and permanently restraining and enjoining Defendant, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with them from:

          i.      manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products which bear the Coach Trademarks, the Coach Trade Dresses, and/or the Coach Design Elements, or any other mark or design element substantially similar or confusing thereto, including, without limitation, the Infringing Products, and engaging in any other activity constituting an infringement of any of Coach's rights in the Coach Trademarks, the Coach Trade Dresses, and/or the Coach Design Elements;

          ii.     engaging in any other activity constituting unfair competition with Coach, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements associated with Coach; or

          iii.    engaging in any other activity that will cause the distinctiveness of the Coach Trademarks or Coach Trade Dresses to be diluted;

     c.      Requiring Defendant to recall from any distributors and retailers and to surrender to Coach for destruction or other disposition all remaining inventory of all Infringing Products, including all name-plates, labels, advertisements, promotional and marketing materials incorporating or reproducing the infringing Coach Marks, as well as means of making same;

     d.      Requiring Defendant to file with this Court and serve on Coach within thirty days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

     e.      Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any product at issue in this action that has been manufactured, imported, advertised, marketed, promoted,

supplied, distributed, offered for sale, or sold by Defendant, has been authorized by Coach, or is related in any way with Coach and/or its products;

       f.      Awarding Coach statutory damages of $2,000,000 per counterfeit mark per type of Infringing Products in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117), or alternatively ordering Defendant to account to and pay to Coach all profits realized by their wrongful acts and also awarding Coach its actual damages, and also directing that such profits or actual damages be trebled, in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117);

       g.      Awarding Coach statutory damages or in the alternative its actual damages suffered as a result of the copyright infringement, and any profits of Defendant not taken into account in computing the actual damages, pursuant to 17 U.S.C. § 504;

       h.      Awarding Coach damages as warranted under the parties' Agreement, which Diggz Clothing LLC has breached, including but not limited to Coach's attorney's fees and costs incurred in enforcement of the Agreement;

       i.      Awarding Coach actual and punitive damages to which it is entitled under applicable federal and state laws;

       j.      Awarding Coach its costs, attorneys' fees, investigatory fees, and expenses to the full extent provided by Section 35 of the Lanham Act (15 U.S.C. § 1117) and Section 505 of the Copyright Act of 1976 (17 U.S.C. § 505);

       k.      Awarding Coach pre-judgment interest on any monetary award made part of the judgment against Defendant; and

       l.      Awarding Coach such additional and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Coach requests a trial by jury in this matter on all issues triable to the jury.

Dated:  December 14, 2010

Alejandro Valle
GONZALEZ SAGGIO & HARLAN LLP
135 N. Pennsylvania Street, Suite 1740
Indianapolis, Indiana  46204
317-686-9800 Telephone
317-686-9821 Facsimile
vallea@gshllp.com Email

Counsel for Plaintiffs

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Mutual Release (hereinafter, the "Agreement") is made and entered into as of this __ day of June, 2010, by and between Plaintiffs Coach, Inc. and Coach Services, Inc. (hereinafter, collectively referred to as "Coach" or "Plaintiff") and Defendant Diggz Clothing, LLC (hereinafter, referred to as "Defendant") (Plaintiff and Defendant are sometimes individually referred to as "Party" and collectively referred to as the "Parties" in this Agreement).

## RECITALS

WHEREAS, Coach is the owner of, and distributor of high quality goods including leather and mixed material handbags, accessories, apparel, footwear, sunglasses, fragrances and perfumes, jewelry and watches, and is the owner of various intellectual property (including Trademarks, Trade Dresses, and Copyrights) associated with the marketing, distribution, and sale of these products (collectively, the "Coach Marks");

WHEREAS, on or about March 4, 2010, Coach filed an action against Defendant in the United States District Court for the Northern District of Indiana entitled *Coach Inc. and Coach Services , Inc. v. Diggz Clothing. LLC*, under Case No. 4:10-cv-00023-RLM-PRC (hereinafter, the "Action"), alleging Defendant manufactured, purchased, imported, distributed, marketed, offered for sale and/or sold merchandise, including but not limited to one or more of the following:  handbags, accessories, apparel, footwear, sunglasses, fragrances and perfumes, jewelry and/or watches; that, although not authentic, are identical to, substantially indistinguishable from, or substantially similar to products

1

manufactured, marketed, distributed, and sold by Coach in association with the Coach Marks (collectively, the "Accused Products"); and

WHEREAS, in order to avoid continued litigation, the Parties enter into this Agreement and by so doing seek to fully, completely, and finally resolve, settle, and release all claims arising and/or relating to the facts alleged in the Action, including claims and counterclaims which were actually asserted or which could have been asserted in the Action, based on conduct up to and including the date of this Agreement;

AGREEMENT

NOW, THEREFORE, in consideration of the promises, covenants, warranties, representations, waivers, and releases contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## 1. DEFENDANT'S REPRESENTATIONS AND WARRANTIES

1.1. Defendant represents and warrants that it has removed from its retail store and is holding in storage the following Accused Products:

| Item Description/Item Number | # of Units |
| --- | --- |
| Purses | 40 |
| Wallets | 35 |

1.2. Defendant represents and warrants that it has not been engaged in the manufacture, purchase, import, distribution, marketing, offering for sale, and/or

2

sale of any Accused Products since having been served with the Summons and Complaint in the Action.

1.3. Defendant's breach of any of the aforesaid representations and warranties will be grounds for Plaintiff to re-assert any of the claims released in connection with this Agreement.

## 2. SETTLEMENT PAYMENT

2.1.     Defendant shall pay Plaintiff Six Thousand Five Hundred Dollars ($6,500.00). Said settlement payment shall be paid by certified bank cashier's check made payable to Coach, Inc. and received by Plaintiff's representative, Alejandro Valle, Esq., Gonzalez Saggio & Harlan LLP, 135 N. Pennsylvania Street, Suite 1740, Indianapolis, IN 46204, no later than the close of business on July 15, 2010.

## 3. SURRENDER OF INVENTORY

3.1. Upon execution of this Agreement, Defendant shall surrender for destruction any remaining Accused Products in Defendant's possession, custody, or control, freight prepaid, to Alejandro Valle, Esq., Gonzalez Saggio & Harlan LLP, 135 N. Pennsylvania Street, Suite 1740, Indianapolis, IN 46204, no later than the close of business on July 15, 2010, and shall certify by no later than that date that all such items have been shipped. Defendant's certification required by this section shall specify the type and number of Accused Products surrendered.

3.2. Within two (2) weeks of entering into this Agreement, Defendant shall identify the sources of all Accused Products to the extent known to Defendant, including names, addresses, email addresses, and telephone/fax numbers, and, to the extent

known to Defendant, disclose the quantities of the Accused Products purchased/sold during the past two years by such sources.

3.3. Within two (2) weeks of entering into this Agreement, Defendant shall provide Plaintiff with a copy of all documents, including but not limited to invoices, purchase orders, checks, shipping documents, computer files, telephone records and correspondence, relating to all importation, purchase, delivery, receipt, sale, and offer for sale of the Accused Products.

## 4. CESSATION OF USE

4.1. Defendant, its agents, servants, successors, and assigns agree they shall not, directly or indirectly:

4.1.1. Manufacture, purchase, produce, distribute, circulate, sell, offer for sale, import, export, advertise, promote, display, ship, market or incorporate in advertising or marketing any of the Accused Products;

4.1.2. Deliver, hold for sale, return, transfer or otherwise move, store or dispose of in any manner the Accused Products, except as required by Section 3.1 of this Agreement;

4.1.3. Manufacture, purchase, produce, distribute, circulate, sell, offer for sale, import, export, advertise, promote, display, ship, market, or incorporate in advertising or marketing any Accused Products and/or other non-authentic products bearing marks or features confusingly similar or substantially similar to the Coach Marks;

4.1.4. Register any addresses for internet websites (hereinafter, "Domain Names") incorporating the word "coach" in the Domain Names or

4

referencing/associating the word "coach" in connection with metadata or key word searches as related to the Domain Names;

4.1.5.   Lease space to, from, or with any landlord or tenant who is engaged in the manufacturing, purchasing, production, distribution, circulation, sale, offering for sale, importation, exportation, advertisement, promotion, display, shipping, or marketing of Accused Products;

4.1.6.   Commit any other acts calculated to cause purchasers to believe that Defendant's products or a third party's products are genuine Coach merchandise or associated in any way with Coach, when they are not authentic Coach products;

4.1.7.   Engage in any other activity constituting unfair competition with Coach or that will cause the distinctiveness of the Coach Marks to be diluted; or

4.1.8.   Assist, aid or attempt to assist or aid any other person or entity in performing any of the prohibited activities referred to above.

4.2.   The Parties acknowledge and agree that Coach reserves its right to conduct, at its sole discretion, regular and periodic inspections of any and all public properties or locations owned, controlled and/or operated by Defendant, in order to ensure its continued compliance with the terms of this Agreement.  Defendant consents to such inspections and will provide Coach and its representatives with access to all public properties or locations owned, controlled and/or operated by Defendant.  In the event that Coach determines that Defendant and/or any of its employees, agents, representatives, parents or subsidiaries are breaching or have breached this Agreement, by purchasing, distributing, advertising, promoting,

5

offering to sell, or selling any Accused Products, then (upon receiving notice

from Coach) Defendant shall immediately surrender any inventory of the

Accused Products and identify the source of such Accused Products in

accordance with the terms and conditions stated in Section 3 of this Agreement.

5. **COOPERATION**

5.1. Upon request, Defendant agrees to execute declaration(s) and/or testify during

depositions or at trial or other proceedings against third parties concerning its

knowledge of the claims made by Plaintiff in the Action.

6. **MUTUAL RELEASES**

6.1. Based on the accuracy of the representations made by Defendant herein, and in

consideration of the full and faithful performance of all of the terms and

conditions of this Agreement, the Parties, on behalf of themselves and their heirs,

executors, administrators, successors and assigns, hereby irrevocably and

unconditionally release and forever discharge one another and their parents,

insurers, subsidiaries, predecessors, successors and assigns and all their

respective shareholders, partners, members, directors, officers, employees,

agents, and attorneys of and from any and all liability, actions, claims, demands,

costs, expenses, damages, causes of action, suits or obligations of any nature,

whether at law, equity or otherwise, whether based upon statute, contract, tort or

otherwise, whether known or unknown, foreseen or unforeseen, accrued or

hereafter accruing, which the Parties (or their heirs, executors, administrators,

successors or assigns) now have, may have or may hereafter assert against one

another, relating to the facts alleged in the Action.  This release against the

6

Defendant and its parents, insurers, subsidiaries, predecessors, successors and assigns and all their respective shareholders, partners, members, directors, officers, employees, agents and attorneys shall be deemed null and void if Defendant fails to perform any of its obligations under this Agreement.

6.2. The Parties represent and warrant that they have not assigned any of the claims released hereunder.

## 7. AGREEMENT NOT A LICENSE

7.1. Nothing contained in this Agreement shall be construed as a license, implied or otherwise, by and between Plaintiff and Defendant for Defendant to use as its own any of the Coach Marks, belonging now or in the future to Coach and/or to its assigns, anywhere in the world.  Defendant shall not represent to anyone that any of its non-authentic products are approved by, sourced, or otherwise affiliated with Coach.

## 8. AGREEMENT IS NOT PERMISSION TO IMPORT

8.1. This Agreement does not permit anyone to import any items bearing trademarks, trade dress, copyrights, or any other source-identifying indicia that Plaintiff or the United States Customs Service deems to be the same or confusingly similar to any trademarks, trade dress, copyrights, or other source-identifying indicia that Coach has recorded or may record.

## 9. NO EFFECT ON CLAIMS AGAINST OTHER PARTIES

9.1. The release between Plaintiff and Defendant embodied in this Agreement is not intended to affect, and should not be construed to affect, Plaintiff's claims against any other parties.

## 10. DISMISSAL OF ACTION

10.1. Plaintiff shall voluntarily dismiss the Action with prejudice against Defendant within twenty-one (21) days of Defendant's performance of all of its obligations under this Agreement.

## 11. NO ADMISSION OF LIABILITY

11.1. This Agreement shall not be used as an admission of liability or wrongdoing by any Party except as may be necessary to enforce the terms and conditions of this Agreement.

## 12. ENTIRE AGREEMENT, MODIFICATIONS AND OTHER GENERAL PROVISIONS

12.1. Integrated Agreement. The Parties agree and acknowledge that this Agreement constitutes and contains the entire agreement and understanding of the parties concerning the subject matter hereof, and supersedes and replaces all prior negotiations, proposed agreements, or agreements, written, oral, or implied. The Parties further agree that any oral representations or modifications concerning this Agreement shall be of no force or effect, and that this Agreement, including this provision can be modified only by a writing signed by all of the Parties. The Parties acknowledge to one another, that no other party, nor any agent or attorney of any other Party, has made any promise, representation, or warranty whatsoever (express, implied or statutory) not contained herein concerning the subject matter hereof, to induce them to execute this Agreement; and that they have not executed this Agreement in reliance upon any such promise, representation or warranty not contained herein.

12.2. <u>Informed Consent</u>.  The Parties acknowledge that they have been represented by independent legal counsel of their own choice throughout all of the negotiations that preceded the execution of this Agreement and that they have executed this Agreement with the consent and on the advice of such independent legal counsel. Each person executing this Agreement in a representative capacity represents and warrants that s/he is empowered to do so.

12.3. <u>Binding Nature</u>.  The Parties agree that this Agreement and all of its terms hereof shall be binding upon their respective heirs, legal successors, trustees, assigns, and licensees.

12.4. <u>Costs and Fees</u>.  Except as otherwise provided herein, the Parties shall each bear their own costs, expenses, attorney fees, and expert witness fees, arising out of, or in any way related to the matters covered in this Agreement.  However, the prevailing Party in an action for violation of, or to enforce, this Agreement shall be entitled to its costs and attorneys' fees incurred in that action.

12.5. <u>Governing Law</u>.  This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of Indiana.  Any action arising out of or related to this Agreement shall be commenced and maintained in a federal or state court situated within the County of Marion, Indiana.  Defendant shall submit to the jurisdiction and venue selected by Coach to bring any action related to this Agreement and agrees to personal service of any related papers by mail.  If any provision or any portion of any provision of this Agreement shall be held unlawful or unenforceable by a court of competent jurisdiction, the balance of this Agreement shall nonetheless in all respects remain binding and effective

9

and shall be construed to be in full force and effect to the extent lawfully

permissible. The failure of a Party to enforce any provision of this Agreement

shall not be construed as a waiver of such provision.

12.6. Execution of Agreement. This Agreement may be executed in counterparts and

by facsimile signatures. Such counterparts, when taken together, shall constitute a

binding agreement among the parties. This Agreement is deemed to be executed

and effective as of the date on which all Parties have signed this Agreement.

IN WITNESS THEREOF, the Parties hereto have executed this Agreement on the

dates signed below.

COACH, INC. and COACH SERVICES,
INC.

By: _____
Name: _____
Title: _____
Dated: _____, 2010

DIGGZ CLOTHING, LLC

By: _____
Name: _____
Title: _____
Dated: _____, 2010

10